# UNITED STATES DISTRICT COURT

### for the

### Eastern District of California

<div style="border:1px solid">
**FILED**

**Apr 09, 2025**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
</div>

| | |
|---|---|
| In the Matter of the Search of )<br>A BLACK iPHONE IN BLACK CASE, )<br>BOOKED AS EVIDENCE ITEM 1B1 OF )<br>FBI CASE: 4-SC-3915174 ) | Case No.  2:25-sw-0315 AC |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached here and incorporated by reference.**

located in the _____Eastern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in possession of a firearm |
| 18 U.S.C. § 922(a)(1)(A) | Unlawful dealing in firearms |
| 21 U.S.C § 841 & 846 | Conspiracy to Distribute Controlled Substances |

The application is based on these facts:

**SEE AFFIDAVIT, attached here and incorporated by reference.**

☒ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Dalton Ryken
_____
*Applicant's  signature*

Task Force Officer Dalton Ryken
_____
*Printed name and title*

Sworn to me and signed telephonically.

Date:  __April 9, 2025__

City and state:  __Sacramento, California__

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

1  MICHELLE BECKWITH
   Acting United States Attorney
2  HEIKO P. COPPOLA
   Assistant United States Attorney
3  501 I Street, Suite 10-100
   Sacramento, CA 95814
4  Telephone: (916) 554-2700
   Facsimile: (916) 554-2900
5
   Attorneys for Plaintiff
6  United States of America

7

8                IN THE UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11 In the Matter of the Search of:            CASE NO.

12 A BLACK iPHONE IN BLACK CASE,              AFFIDAVIT IN SUPPORT OF SEARCH
   BOOKED AS EVIDENCE ITEM 1B1 OF FBI                    WARRANT
13 CASE: 4-SC-3915174

14

15 I, Dalton Ryken, being first duly sworn, hereby depose and state as follows:

16               I.      **INTRODUCTION AND AGENT BACKGROUND**

17      1.      Your affiant is Detective Dalton C. Ryken.  Your affiant is employed by the Solano

18 County Sheriff's Office and has been since September of 2014.  Your affiant is currently assigned as a

19 Detective and Task Force Officer (TFO) with the Federal Bureau of Investigation's (FBI) Solano

20 County Violent Crime Task Force (SCVCTF) and is dually sworn as a state and federal law enforcement

21 officer.

22      2.      Your affiant's responsibilities include investigations pertaining to violent offenders and

23 violent organizations.  These investigations frequently involve the possession and possession for sale of

24 controlled substances and firearms, robberies, and homicides.  Your affiant is currently assigned to a

25 task force which includes members from various local agencies as well as federal agents.  Part of your

26 affiant's assignment is to assist local Solano County law enforcement partners with investigations

27 involving violent acts and violent crime.

28 / / /

                                    1

3.      Your affiant attended a six-month basic police officer academy at the Napa Valley Police Academy in Napa, California. This training included over 20 hours of specialized training in controlled substances, which also included, but was not limited to, controlled substance identification, packaging, distribution, influence, and characteristics of use. Your affiant has attended over 200 hours of formal training pertaining to controlled substances and controlled substance investigations. I have arrested or assisted with the arrest of persons for possession of cocaine, cocaine base, crystal methamphetamine, marijuana, heroin, fentanyl, and MDMA. I have contacted no less than 500 people who have been arrested for possession of controlled substance(s), possession of controlled substances for sale, and/or firearms possession.

4.      Your affiant has participated in discussion and informal training sessions with more experienced controlled substance agents regarding the methods used by controlled substance manufactures, traffickers, and users. I regularly read controlled substance related literature to remain abreast of contemporary topics. Your affiant has spoken with individuals who have admitted possessing controlled substances for sale and/or possessing controlled substances for personal use. These individuals have discussed various topics surrounding controlled substances to include: packaging, pricing, use, manufacturing, methods of concealing, money laundering, transportation, protection, and the overall lifestyle and culture surrounding the illicit business.

5.      Your affiant has testified as an expert in Solano County Superior Court for possession of methamphetamine, heroin, cocaine and fentanyl for sale. As a Detective and TFO, I have investigated cases involving possession of controlled substances and firearms for sale. Through these investigations, I have participated in numerous controlled buys of firearms and controlled substances.

6.      Your affiant has participated in several investigations involving criminal gang activity within the County of Solano. I regularly meet with various Deputies and Detectives from the Solano County Sheriff's Office, other members of the FBI task force, and counterparts from other law enforcement agencies to share information regarding gang activity. I also regularly speak with gang members and their associates. I have attended various formal and informal training pertaining to gang activity and regularly review intelligence reports from federal, state, and local agencies regarding gang trends and activities

7. Your affiant was previously assigned to the Sheriff's Enforcement Team (SET). SET's responsibility and mission is the apprehension of fugitives and checking on the compliance of individuals on supervised release. During my time on SET, I conducted numerous controlled substance and firearms investigations. I authored and served various search warrants pertaining to controlled substances, firearms, and stolen property. I have worked with various bureaus within the Sheriff's Office, as well as various federal and state law enforcement agencies involving the investigations of various crimes.

8. Previously, while employed as a Deputy Sheriff, your affiant was assigned to the Solano County Sheriff's Office Patrol Bureau for a total of four years. During this time, your affiant made hundreds of arrests, conducted and participated in over a thousand criminal investigations relating to, but not limited to, homicides, assaults, domestic violence, robberies, burglaries, thefts, sexual assaults, stolen vehicles, possession of controlled substances for sale, firearms possession, gang participation, and missing persons. These investigations consisted of interviewing witnesses, victims, and possible leads; locating and gathering evidence; apprehending criminal suspects and violators of the law; preparing and processing all necessary reports; and testifying as a witness in court.

9. Prior to becoming a Deputy Sheriff, your affiant graduated from California State University Sacramento in 2012 with a Bachelor of Science Degree in Criminal Justice. During my studies, I attended and completed courses relating to criminal investigations of the following: crimes against persons; crimes against property; narcotics; gangs; and firearms related offenses.

10. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

## II. IDENTIFICATION OF THE DEVICES TO BE EXAMINED

11. The property to be searched is one device seized from JOSUE RODRIGUEZ (RODRIGUEZ) on March 19, 2025, pursuant to a federal search warrant executed that day at RODRIGUEZ's residence located at 117 Harvard Ave. Vallejo. This device, collectively referred to as the "**SUBJECT DEVICE**," is further described as follows:

3

- A black iPhone with a black case case, booked as evidence item 1B1 of FBI case 4-SC-3915174 and seized from RODRIGUEZ's bedroom on March 19, 2025.

The **SUBJECT DEVICE** is currently located in the FBI evidence storage located at 2001 Freedom Way, Roseville, California 95678.

12.     This warrant would authorize the forensic examination of the **SUBJECT DEVICE** for the purpose of identifying electronically stored data particularly described in Attachment B.

13.     The **SUBJECT DEVICE** is currently in the possession of the FBI.  Based on my training and experience, I know that the **SUBJECT DEVICE** has been stored in a manner in which the contents are, to the extent material to this investigation, remain in substantially the same state as it was when the FBI first took possession of the **SUBJECT DEVICE**.

14.     I believe that the SUBJECT DEVICE contains evidence in violation of the following statutes:   18 U.S.C. § 922(g)(1) – felon in possession of a firearm; 21 U.S.C. §§ 841 and 846 - conspiracy to distribute and possession with intent to distribute controlled substances;  21 U.S.C. § 841(a)(1) – possession with intent to distribute controlled substances; and 18 U.S.C. § 922(a)(1)(A) – unlawful dealing in firearms

### III.    <u>PROBABLE CAUSE</u>

15.     The FBI is investigating JOSUE RODRIGUEZ for firearms trafficking and being a felon in possession of firearm(s) in the eastern district of California. Assisting SCVCTF in this investigation is is a Confidential Human Source[1]  ("CHS"). Between May 28, 2024 and January 15, 2025, SCVCTF through the CHS conducted four separate controlled buy/walk operations. During these four operations, SCVCTF purchased 10 firearms from RODRIGUEZ. Several of the firearms sold by RODRIGUEZ appeared to be privately manufactured without serial numbers and at least two of the firearms purchased by the CHS were machine guns.  RODRIGUEZ suffered a State of California felony conviction for First

---

[1]    The CHS started cooperating with the FBI in order to avoid prosecution from a state arrest. The CHS has since fulfilled his/her commitment to law enforcement and continued to cooperate with the FBI for monetary compensation.  The CHS has requested the FBI's assistance with his/her immigration status in the US should it be needed in the future.  No assistance with the CHS' immigration status has been provided to the CHS thus far.  The CHS has no criminal convictions.  The CHS has been arrested, but not convicted, for the following offenses: possession of a concealed firearm in a vehicle.  The CHS has been an informant for the FBI since August 2022 and has been proven to be a reliable CHS thus far. The CHS' reporting has been proven to be truthful and has been independently verified by FBI agents.

Degree Burglary in 2013.

16.    On March 13, 2025, this Court issued an arrest warrant for RODRIGUEZ as well as a search warrants for RODRIGUEZ's residence located at 117 Harvard Ave. Vallejo, his vehicles and his person. The complaint and search warrant affidavit are incorporated by reference herein.[2]

17.    Between March 17, 2025 and March 18, 2025, the CHS communicated with RODRIGUEZ on telephone number 707-334-9511 regarding firearms and controlled substances. In summary, RODRIGUEZ told the CHS he had a .38 snub nose revolver  and a Glock 26 semiautomatic pistol for sale. RODRIGUEZ indicated that he would soon have more firearms. RODRIGUEZ told the CHS he could get two pounds of methamphetamine from his uncle that RODRIGUEZ would sell to the CHS for $1200 a pound.

18.    On March 19, 2025, the Solano County Sheriff's Office SWAT team and the SCVCTF executed the search warrant. RODRIGUEZ was arrested at the residence without incident. During the search of the residence, **SUBJECT DEVICE** was seized from RODRIGUEZ's bedroom which was adjacent to the kitchen. SA Cernat called 707-334-9511 and **SUBJECT DEVICE** rang. In RODRIGUEZ's bedroom agents found a plastic Ziploc-style baggie containing several blue pills. From my training and experiences, I recognized these pills as being consistent with fentanyl pills commonly stamped with "M30" to resemble prescription Oxycodone. Following *Miranda* warnings, RODRIGUEZ admitted possessing fentanyl pills and to being a fentanyl user. Based on RODRIGUEZ's statement as well as my observation of the pills, I believed them to be fentanyl. The bag of pills with additional evidence packaging totaled 51.4 grams AGW (Adjusted Gross Weight).

19.    Agents determined that another bedroom at the end of the hallway on the right hand side was controlled by RODRIGUEZ.  Agents found indicia in the bedroom belonging to RODRIGUEZ, specifically, a prescription pill bottle(s) and mail in RODRIGUEZ's name. Additionally, Ronald STANLEY, another tenant at the residence, told agents that the room was used by RODRIGUEZ and that RODRIGUEZ told the other tenants that the room was "off limits." STANLEY observed RODRIGUEZ go into the room frequently. Agents seized the following, among other things, from the

---

[2] The criminal complaint and search warrants were issued by US Magistrate Judge Sean C. Riordan in Eastern District of California case numbers: 2:25-mj-0052 SCR; 25-sw-0225 SCR; 25-sw-0226 SCR; 25-sw-0227 SCR; and 25-sw-0228 SCR.

aforementioned room:

- One small .38 caliber revolver;

- One semi-automatic 9mm firearm;

- Two .22 caliber rifles;

- Several bags containing a white powdery substance which I recognized from my training and experience to be consistent with suspected cocaine and/or suspected powder fentanyl;

- A 3D printer;

- Several 3D printed firearm lower receivers;

- Miscellaneous firearm parts and ammunition.

20.    RODRIGUEZ utilized the **SUBJECT DEVICE** to communicate with the CHS regarding the sale of firearms and controlled substances between March 17 and March 18, 2025.  The CHS obtained the **SUBJECT DEVICE** phone number from RODRIGUEZ in or about January 2025. TFO Ryken believes a search of the **SUBJECT DEVICE** will yield further evidence of the crimes being investigated.

### Training and Experience Regarding Firearms and Narcotics

21.    I know that individuals who are involved in the illegal possession and distribution of narcotics and firearms often use cellular telephones to communicate with one another, either by voice or text message. The information stored in a mobile telephone used by illegal narcotics and firearm traffickers often contains evidence of their criminal activities. Cellular telephones also contain in their memory text messages sent, received, and drafted by the mobile telephone user. The text message history of a cellular telephone can contain evidence of illegal drugs and/or firearm possession, trafficking and/or manufacturing because it shows the communications or planned communications of a narcotics or firearm possessor, trafficker, and/or manufacturer and the telephone numbers of those with whom the illegal narcotics or firearm possessor, trafficker, and/or manufacturer communicated or intended to communicate.

22.    Illegal narcotics and firearms traffickers sometimes leave voice messages for each other, and this is evidence both of their mutual association and possibly their joint criminal activity. Cellular telephones can also contain other user-entered data files such as "to-do" lists, which can provide

evidence of crime when used by an illegal narcotics or firearms traffickers. Cellular telephones can also contain photographic data files, which can be evidence of criminal activity if the user who was in possession of narcotics or firearms took pictures of evidence of crime. Cellular telephone companies also store the data described in this paragraph on their own servers and associate the data with particular users' mobile telephones.

23.   Based on my training and experience, I know that people who are involved in the illegal possession and trafficking of narcotics and firearms often maintain photographs or videos of their narcotics, firearms and ammunition on their cellular telephones, including photographs or videos of the possessor holding narcotics of firearms.

24.   I know that individuals involved in the illegal distribution of narcotics and firearms tend to maintain a continual chain of communication with suppliers, lookouts and co-conspirators to facilitate their criminal activities. I also know that these communications are primarily conducted by cellular telephones. I know that people who negotiate the sale of narcotics and /or firearms will often use cell phones to contact co-conspirators to obtain additional quantities of firearms and/or narcotics. I also know that photos of narcotics, firearms and currency are often stored on such devices. Cellular phones can also supply historical information about the dates, times, duration, number, destination, and location of telephone calls, messages, photographs, video, audio, and other information processed or stored by the cellular telephone.

25.   It has been my experience that people engaged in criminal activities utilize cellular telephones to maintain contact, either by telephone calls and/or text messaging, with close associates and people they trust, to include associates in the criminal activities, and that they carry these cellular telephones with them during the course of their criminal activities. Moreover, it has been my experience that people engaged in such criminal activities utilize these cellular telephones to take photographs and videos of themselves, their criminal associates, and other items related to their criminal activities, in some cases from the proceeds from their criminal activities. Relating to the ever-evolving level of cellular telephone technology, particularly increased storage capacity, through my training and experience, I know that cellular telephones can regularly store contacts, call logs, text messages, multimedia files, voicemail messages, and location/GPS data months and in some cases years from the

7

date of the phone's activation.

26.    Those who are involved in the illegal narcotics and firearms trafficking often, intentionally or unintentionally, retain paperwork and evidence indicating the source of the narcotics and/or firearms whether it be by purchase, theft, or other means.

### IV.    TECHNICAL TERMS

27.    Based on my training and experience, I use the following technical terms to convey the following meanings:

- Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

- Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

- Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.

8

However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

• GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

• PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

• IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric

9

address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static-that is, long-term-IP addresses, while other computers have dynamic-that is, frequently changed-IP addresses.

- Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

28. Based on my training, experience, and research, I know that the **SUBJECT DEVICE** has capabilities that allow it to serve as serve as a wireless telephone, digital camera, GPS navigation device, and PDA, and a means to access the internet. I also know that the **SUBJECT DEVICE** is capable of downloading applications such as Instagram and other social media applications which may be used to send messages. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## V.    ELECTRONIC STORAGE AND FORENSIC ANALYSIS

29. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

30. Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described in the warrant, but also forensic evidence that establishes how the **SUBJECT DEVICE** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **SUBJECT DEVICE** because:

- Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph

10

that has been deleted from a word processing file).

• Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

• A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

• The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

• Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

31.    <u>Nature of examination.</u>  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

32.    <u>Manner of execution.</u>  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

///

///

## VI.     **AUTHORIZATION REQUEST**

33.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **SUBJECT DEVICE** described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

/s/ Dalton Ryken
Dalton Ryken
Task Force Officer
FBI

Subscribed and sworn to via telephone me on:     April 9, 2025

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

/s/ Heiko P. Coppola
Approved as to form by AUSA Heiko P. Coppola

## <u>ATTACHMENT A</u>

The property to be searched is an electronic device seized from JOSUE RODRIGUEZ on March 19, 2025, pursuant to federal search warrants. This device is collectively referred to as the "**SUBJECT DEVICE**" and are further described as follows:

- Black iPhone in black case, booked as Evidence item 1B1 of FBI case 4-SC-3915174. The SUBJECT DEVICE is currently in the FBI evidence storage located at 2001 Freedom Way, Roseville, California 95678.

This warrant authorizes the forensic examination of the **SUBJECT DEVICE** for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.       All records on the **SUBJECT DEVICE** described in Attachment A that relate to the following violations:

-   18 U.S.C. § 922(g)(1) – Felon in possession of a firearm
-   21 U.S.C. §§ 841 and 846 - Conspiracy to distribute and possession with intent to distribute controlled substances;
-   21 U.S.C. § 841(a)(1) – Possession with intent to distribute controlled substances; and
-   18 U.S.C. § 922(a)(1)(A) – Unlawful dealing in firearms;

collectively referred to here as the "Target Offences," involving JOSUE RODRIGUEZ, from May 28, 2024, to the date of the takedown on March 19 2025, including:

a.   Records of calls and other communications on the **SUBJECT DEVICE**, including but not limited to call logs, audio files, text messages, multi-media messages, emails, and private chat logs;

b.   Records relating to contact lists, address books, telephone notes, appointment books, task lists, social media user information, and calendars;

c.   Records relating to narcotics, firearm and/or ammunition possession, purchase, sale, and/or use;

d.   Records of any of the Target Subject associating with one another, or other co-conspirators, or that are otherwise helpful to identify those individuals that committed or are committing the Target Offenses;

e.   Records relating to the location of Target Subjects or other co-conspirators at the times they are involved in planning, executing or covering up the commission of the Target Offense, or are in possession of narcotics, firearms, or ammunition

f.   Records of the times the **SUBJECT DEVICE** was used;

g.   Records relating to Global Positioning Satellite (GPS) entries, Internet Protocol Connections, and location entries, to include Cell Tower and Wi-Fi entries;

h.   Evidence indicating how and when the **SUBJECT DEVICE** was accessed or used to determine the chronological context of access, use, and events relating to the Target Offenses and to the user;

i.   Evidence indicating the **SUBJECT DEVICE'** user's state of mind as it relates to the Target Offenses; and

j.   Contextual information necessary to understand the evidence described in this attachment.

2.    Evidence of user attribution showing who used or owned the **SUBJECT DEVICE** at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat" or instant messaging logs, photographs, images, videos, audio files, and correspondence.

3.    Passwords, encryption keys, and other access devices that may be necessary to access the **SUBJECT DEVICE**;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the investigating agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of )<br>A BLACK iPHONE IN BLACK CASE, BOOKED )<br>AS EVIDENCE ITEM 1B1 OF FBI CASE: 4-SC- )<br>3915174, CURRENTLY LOCATED in the FBI )<br>evidence storage located at 2001 Freedom Way, )<br>Roseville, California 95678 ) | Case No.    2:25-sw-0315 AC |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Eastern _____ District of _____ California _____
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached here and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached here and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _____ April 23, 2025 _____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐  for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:     April 9, 2025 @ 12:46 p.m.

City and state:     Sacramento, California

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

    I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

    Subscribed, sworn to, and returned before me this date.

_____     _____
Signature of Judge                              Date

**ATTACHMENT A**

The property to be searched is an electronic device seized from JOSUE RODRIGUEZ on March 19, 2025, pursuant to federal search warrants. This device is collectively referred to as the "**SUBJECT DEVICE**" and are further described as follows:

- Black iPhone in black case, booked as Evidence item 1B1 of FBI case 4-SC-3915174. The SUBJECT DEVICE is currently in the FBI evidence storage located at 2001 Freedom Way, Roseville, California 95678.

This warrant authorizes the forensic examination of the **SUBJECT DEVICE** for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the **SUBJECT DEVICE** described in Attachment A that relate to the following violations:

-   18 U.S.C. § 922(g)(1) – Felon in possession of a firearm
-   21 U.S.C. §§ 841 and 846 - Conspiracy to distribute and possession with intent to distribute controlled substances;
-   21 U.S.C. § 841(a)(1) – Possession with intent to distribute controlled substances; and
-   18 U.S.C. § 922(a)(1)(A) – Unlawful dealing in firearms;

collectively referred to here as the "Target Offences," involving JOSUE RODRIGUEZ, from May 28, 2024, to the date of the takedown on March 19 2025, including:

a.   Records of calls and other communications on the **SUBJECT DEVICE**, including but not limited to call logs, audio files, text messages, multi-media messages, emails, and private chat logs;

b.   Records relating to contact lists, address books, telephone notes, appointment books, task lists, social media user information, and calendars;

c.   Records relating to narcotics, firearm and/or ammunition possession, purchase, sale, and/or use;

d.   Records of any of the Target Subject associating with one another, or other co-conspirators, or that are otherwise helpful to identify those individuals that committed or are committing the Target Offenses;

e.   Records relating to the location of Target Subjects or other co-conspirators at the times they are involved in planning, executing or covering up the commission of the Target Offense, or are in possession of narcotics, firearms, or ammunition

f.   Records of the times the **SUBJECT DEVICE** was used;

g.   Records relating to Global Positioning Satellite (GPS) entries, Internet Protocol Connections, and location entries, to include Cell Tower and Wi-Fi entries;

h.   Evidence indicating how and when the **SUBJECT DEVICE** was accessed or used to determine the chronological context of access, use, and events relating to the Target Offenses and to the user;

i.   Evidence indicating the **SUBJECT DEVICE'** user's state of mind as it relates to the Target Offenses; and

j.   Contextual information necessary to understand the evidence described in this attachment.

2.      Evidence of user attribution showing who used or owned the **SUBJECT DEVICE** at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat" or instant messaging logs, photographs, images, videos, audio files, and correspondence.

3.      Passwords, encryption keys, and other access devices that may be necessary to access the **SUBJECT DEVICE**;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the investigating agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.